# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**M.D. MODZELEWSKI, F.D. MITCHELL, J.A. FISCHER**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**TONY L. PIATTI**
**CORPORAL (E-4), U.S. MARINE CORPS**

**NMCCA 201300316**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 23 April 2013.
**Military Judge:** Maj Y.J. Lee, USMCR.
**Convening Authority:** Commanding Officer, Marine Corps Air Station, Beaufort, SC.
**Staff Judge Advocate's Recommendation:** Maj H.J. Brezillac, USMC.
**For Appellant:** Maj John J. Stephens, USMC.
**For Appellee:** Maj Paul M. Ervasti, USMC; Capt Matthew M. Harris, USMC.

**23 January 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of abusive sexual contact with a child and obstructing justice, in violation of Articles 120(i) and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920(i) and 934. The military judge imposed a sentence of three years confinement, reduction to pay grade E-1, and a dishonorable discharge. Pursuant to a pretrial

agreement, the convening authority approved the adjudged sentence, but suspended confinement in excess of 24 months.

The appellant alleges that the military judge erred in refusing to give him day-for-day pretrial confinement (PTC) credit and additional administrative credit for the period during which he was confined to a military hospital for psychiatric evaluation and treatment. After thoroughly examining the record of trial and the pleadings of the parties, we conclude that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

### Factual Background

While pending trial by general court-martial, the appellant was placed under a military protective order (MPO) following a domestic dispute with his wife. Following a violation of the MPO, the appellant was placed in the psychiatric ward of a military hospital for twelve days and then confined to a brig for sixty-three days prior to his court-martial. At trial, the defense counsel sought day-for-day PTC credit for all 75 days, while the trial counsel argued that the appellant was entitled to credit only for the sixty-three days spent in the brig. The only evidence presented on the motion was the testimony of the appellant, from which the following narrative largely derives.

On the evening of 6 February 2013, the appellant visited his wife at their off-base residence in Beaufort, South Carolina, in violation of the MPO. The visit escalated into a conflict, during which the appellant broke a beer bottle and threatened to damage her vehicle. When he suspected that his wife may call authorities, the appellant ran into nearby woods and ascended a 60 foot tree. He remained there overnight, securing his position on the tree with his shoelaces. The following day, a member of his command found the appellant around 1200 or 1300. After the Beaufort Fire Department retrieved the appellant from the tree with a ladder, civilian authorities handcuffed him, and turned him over at the scene to personnel from the base Provost Marshal's Office (PMO). Although the local authorities un-cuffed the appellant upon turnover, the military authorities promptly handcuffed him again before transporting him to the naval hospital at Marine Corps Air Station (MCAS) Beaufort.

2

At the hospital, medical personnel evaluated the appellant, evidently to ensure that he was not suffering from hypothermia from his night outdoors. While at the hospital, the appellant overheard conversations between his command representative and PMO personnel indicating that he would shortly be placed in the brig for violating the MPO. However, during his evaluation at the naval hospital, the decision was made that the appellant should receive a psychiatric evaluation. The only evidence of record as to how that decision was made is the testimony of the appellant: "Later on, while at the hospital, they had me talk to a . . . psychologist to the best of my knowledge, and she recommended that I go to a hospital prior to going to the Brig." Record at 259.

Later that evening, the appellant was transported by ambulance, unrestrained, to the psychiatric ward at the Army hospital onboard Fort Stewart, Georgia. There, he appears to have been subject to the same level of restraint as other patients. The doors to the ward were locked, and he left only to go to the chow hall or the gym, both under supervision. He remained at that facility from 7 February 2013 until 19 February 2013. On that date, a command representative arrived to drive him back to MCAS Beaufort. When the appellant asked whether he was going to the brig, the command representative told him that the commanding officer (CO) was "over at legal determining that." *Id.* at 271. Later that day, the CO informed the appellant that he would be taken to the brig, and he was presented with a confinement order. *Id.* After an overnight stay in the PMO's detention cell, the appellant was taken to the Naval Consolidated Brig, where he stayed confined until his trial.

On 9 February 2013, while his client was hospitalized at Fort Stewart, the trial defense counsel requested a RULE FOR COURTS-MARTIAL 706, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) board, noting that he had learned that his client "had undergone a mental breakdown . . . made suicidal ideations, undertook an unauthorized absence, and was later found by emergency personnel in a tree." Appellate Exhibit XXXVII at 147. The record indicates that the evaluation was not performed at Fort Stewart, but instead was completed at the Parris Island Branch Health Clinic, Naval Hospital Beaufort, on 20 February 2013, after the appellant was returned to his command and prior to transport to the Naval Consolidated Brig. AE XXXIV.

At trial, the military judge denied the defense counsel's motion for twelve days of PTC credit for the period spent at

3

Fort Stewart, ruling that PTC began on 19 February 2013, when the command ordered the appellant placed in pretrial confinement. Record at 273.

## Discussion

On appeal, the appellant seeks not only day-for-day credit for the time spent at Fort Stewart, but also additional credit for violation of the requirements of R.C.M. 305, which he argues were triggered by his "confinement" at the psychiatric ward.

An appellant is entitled to day-for-day credit for time that he spends either in pretrial confinement, or in pretrial restriction equivalent to confinement. *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985) (summary disposition). Whether an appellant is entitled to pretrial confinement credit for restraint is an issue we review *de novo*. *United States v. Rendon*, 58 M.J. 221, 224 (C.A.A.F. 2003) (citing *United States v. Smith*, 56 M.J. 290 (C.A.A.F 2002)). An appellant subjected to "the physical restraint attendant to pretrial confinement" may be entitled to additional credit for violation of the procedural requirements of R.C.M. 305. *Id*. at 224.

This case differs from those cited and relied upon by the defense in several fundamental facts. First, there is no evidence before us in the record that the appellant's command ordered him into the psychiatric ward of the Fort Stewart hospital, or played any role whatsoever in that decision. *Cf*. *United States v. Regan*, 62 M.J. 299 (C.A.A.F. 2006) (trial judge awarded *Mason* credit for days in a drug treatment program where command gave the appellant a choice to enter the program or enter confinement). The only evidence of record, provided by the appellant himself, is that a health provider at Naval Hospital Beaufort suggested that a psychiatric evaluation would be necessary or helpful, and that he was transported by ambulance from one hospital to the other.

Second, there is no evidence that the referral was an involuntary one. Although he testified under direct examination that he did not feel free to leave the secure psychiatric ward, the appellant did not testify that his admission for treatment was itself involuntary. An involuntary admission for in-patient psychiatric care within the military triggers a host of notifications, procedural protections, and requirements for documentation: this record lacks any indicia that the

4

appellant's admission to Fort Stewart for psychiatric care was involuntary within the meaning of controlling instructions.[1]

Moreover, the record indicates that the appellant's hospitalization was for a valid medical purpose. The appellant had been facing court-martial charges for many months. When he engaged in unusual and reckless behavior, he was admitted to a psychiatric ward upon recommendation of a mental health professional. There, he appears to have been treated as all other patients were treated. In his testimony, the appellant indicated no way in which his restraint or conditions differed from those of any other patient.

In determining whether the appellant's stay at the Fort Stewart hospital for psychiatric evaluation was restraint tantamount to confinement, we look to the circumstances of his admission and stay and conclude that he was not in restraint tantamount to confinement. *Cf*. *Regan*, 62 M.J. at 301. Additionally, we note that the appellant would not be entitled to administrative credit for violations of R.C.M. 305 even if the trial judge or this court awarded *Mason* credit. The conditions of the appellant's inpatient stay at Fort Stewart's hospital did not amount to "physical restraint, the essential characteristic of confinement," thus entitling him to the procedural protection of R.C.M. 305 and credit for its violation. *Rendon*, 58 M.J. at 224; *see also Regan*, 62 M.J. at 302.

## Conclusion

Accordingly, the findings and the sentence, as approved by the convening authority, are affirmed.


For the Court



R.H. TROIDL
Clerk of Court

---

[1] *See* Department of Defense Instruction 6490.4, "Requirements for Mental Health Evaluations of Members of the Armed Forces," August 28, 1997; Secretary of the Navy Instruction 6320.24a (16 Feb 1999).

5